UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| FRANCENIA GRIFFEY, | : | Case No. 1:08-cv-786 |
| Plaintiff, | : | Judge Sandra S. Beckwith |
| | : | Magistrate Judge Timothy S. Black |
| vs. | : | |
| COMMISSIONER OF SOCIAL SECURITY, | : | |
| Defendant. | : | |

**REPORT AND RECOMMENDATION[1] THAT: (1) THE ALJ'S NON-DISABILITY FINDING BE FOUND SUPPORTED BY SUBSTANTIAL EVIDENCE, AND AFFIRMED; AND (2) THIS CASE BE CLOSED**

This is a Social Security disability benefits appeal. At issue is whether the administrative law judge ("ALJ") erred in finding Plaintiff "not disabled" and therefore unentitled to supplemental security income ("SSI"). (*See* Administrative Transcript ("Tr.") (Tr. 19-40) (ALJ's decision)).

**I.**

On June 25, 2003, Plaintiff filed an application for SSI alleging that she became disabled on May 31, 2002, due to learning difficulties, lupus, poor circulation, chronic back pain, high blood pressure, and depression. (Tr. 82-84, 94).

---

[1] Attached hereto is a NOTICE to the parties regarding objections to this Report and Recommendation.

Upon denial of her claims on the state agency level, she requested a hearing *de novo* before an ALJ. (Tr. 49-50). A hearing was held on June 22, 2007, at which Plaintiff appeared with counsel and testified. (Tr. 484). A vocational expert and medical expert were also present and testified. (Tr. 312-66).

On July 17, 2007, the ALJ entered his decision finding Plaintiff not disabled because she could perform a significant number of jobs in the national economy. (Tr. 19-40). That decision became the final determination upon denial of review by the Appeals Council. (Tr. 4-6).

Plaintiff was 53 years old on the date of the ALJ's decision. (Tr. 39, 91). She completed high school and had prior work experience as a machine operator, kitchen worker, ride operator, and restaurant worker. (Tr. 95).

The ALJ's "Findings," which represent the rationale of his decision, were as follows:

1. The claimant filed an application for supplemental security income on October 28, 2003.

2. The claimant has not performed substantial gainful activity since October 28, 2003, the date of her application for supplemental security income.

3. The medical evidence establishes "severe" impairments of borderline intellectual functioning, obesity, history of lupus, hypertension, lumbar spine degenerative changes, painful low back and painful foot syndrome but that the claimant does not have an impairment or combination of impairments listed in, or medically equal to one listed in, section 12.05 (mental retardation) or any other section of Appendix 2, Subpart P, Regulations No. 4.

4.  The claimant's allegations of disability are not supported by substantial objective medical evidence or clinical findings and cannot be considered credible when evaluated under the guidelines of 20 CFR 416.929.

5.  The claimant is capable of performing the basic functional requirements of light work, as such work is defined for Social Security purposes, subject to the following additional limitations: no more than simple repetitive tasks; can sit as much as six hours during any given eight-hour workday; can stand and walk as much as four hours during any given eight-hour workday with no constant walking or standing but spread over the four-hour period; no climbing ladders, ropes, or scaffolding; no stooping; only occasional bending; no strict production standards or fast-paced work; duties that can be done by receiving verbal rather than written instructions; no more than occasional overhead reaching.

6.  The claimant is unable to perform her past relevant work.

7.  The claimant is between 50 and 54 years old and is classified as an individual who is "closely approaching advanced age" for Social Security purposes (20 CFR 416.963).

8.  The claimant has a high-school education (20 CFR 416.964).

9.  The claimant does not have "transferable" work skills within the meaning of the Social Security Act (20 CFR 416.968).

10. Based on an exertional capacity for light work, and the claimant's age, education, and work experience, section 416.969 of Regulations No. 16 and Vocational Rule 202.13 of Table No. 2, Appendix 2, Subpart P, Regulations No. 4 would direct a conclusion of not "disabled."

11. Although the claimant's functional limitations do not permit her to perform the full range of light work, using the above-cited rule as a framework for decision making, there are a significant number of jobs in the national economy that she could perform. Examples of such jobs are carton packaging machine operator, buffing machine operator, and printing machine operator. There are as many as 3,000 such jobs at the light level of exertion in the region of Dayton, Ohio. Those jobs exist in proportionate numbers in the national economy as well. Such jobs are representative of a significant number of jobs in the national economy that the claimant remains capable of performing despite her documented impairments.

> 12. The claimant was not "disabled," as defined in the Social Security Act, at any time through the date of this decision (20 CFR 416.920(g)).

(Tr. 38-39).

In summary, the ALJ concluded that Plaintiff was not under a disability as defined by the Social Security Regulations and was therefore not entitled to SSI. (Tr. 40).

On appeal, Plaintiff argues that: (1) the ALJ erred by not accepting the RFC opinions of the treating physicians; (2) the ALJ erred in finding that she did not meet Listing 12.05(C); (3) the ALJ erred in finding that she was not disabled on the basis of pain; and (4) the ALJ erred in disregarding the vocational expert's testimony regarding clear air environment. (Doc. 6 at 8-12). Each argument will be addressed in turn.

## II.

The Court's inquiry on appeal is to determine whether the ALJ's non-disability finding is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401 (1971). In performing this review, the Court considers the record as a whole. *Hephner v. Mathews,* 574 F.2d 359, 362 (6th Cir. 1978). If substantial evidence supports the ALJ's denial of benefits, that finding must be affirmed, even if substantial evidence also exists in the record upon which the ALJ could have found plaintiff disabled. As the Sixth Circuit has explained:

> "The Commissioner's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion. The substantial evidence standard presupposes that there is a "zone of choice" within which the Commissioner may proceed without interference from the courts. If the Commissioner's decision is supported by substantial evidence, a reviewing court must affirm."

*Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994).

The claimant bears the ultimate burden to prove by sufficient evidence that she is entitled to disability benefits. 20 C.F.R. § 404.1512(a). That is, she must present sufficient evidence to show that, during the relevant time period, she suffered an impairment, or combination of impairments, expected to last at least twelve months, that left her unable to perform any job in the national economy. 42 U.S.C. § 423(d)(1)(A).

**A.**

For her first assignment of error, Plaintiff maintains that the ALJ erred by not accepting the RFC opinion of her treating physician.

The record reflects that:

Plaintiff has treated with Nancy Hogan, certified nurse practitioner, for discoid lupus.[2] Ms. Hogan noted Plaintiff to have prominent discoid lupus of the scalp, which had progressed significantly. (Tr. 215). On January 26, 2006, Ms. Hogan found Plaintiff to have areas of lupus on her scalp, elbows, and knee. These lesions develop as a red, inflamed patch with a scaling and crusty appearance and were worsening. (Tr. 214).

---

[2] Discoid lupus erythematosus ("DLE") is a chronic skin condition of sores with inflammation and scarring favoring the face, ears, and scalp, and, at times, on other body areas.

Ms. Hogan noted that Plaintiff was unable to work due to irritation from discoid lupus. (Tr. 207).

Dr. George Kaiser has been Plaintiff's treating physician since 2001. In December 2003, Plaintiff presented to Dr. Kaiser with complaints of low back pain. (Tr. 221). Dr. Kaiser prescribed Vicodin to help alleviate Plaintiff's back pain. (*Id*.) An MRI was performed on May 30, 2006 for Plaintiff's history of low back pain, radiculopathy, and left leg pain. (Tr. 244). The MRI revealed multilevel degenerative changes of the lumbar spine. (*Id*.) Dr. Kaiser opined that Plaintiff was limited to lifting and carrying less than ten pounds, standing and walking two to four hours in a total eight hour workday and without interruption for thirty minutes, and sitting four to six hours in a total eight hour workday and on any single occasion for one hour. (Tr. 216-217). Dr. Kaiser further noted in his RFC that Plaintiff is to limit exposure to heights, moving machinery, and vibration. (Tr. 218).

One time consultative examiner, Dr. Nancy Schmidtgoessling, examined Plaintiff on September 16, 2006. (Tr. 236-243). Dr. Schmidtgoessling found Plaintiff's judgment was limited by substantially below average intellectual functioning. (Tr. 239). WAIS-III test results were indicative of mental retardation (Verbal IQ of 52; Performance IQ of 52; and Full Scale IQ of 48). (*Id*.) Dr. Schmidtgoessling assigned Plaintiff a GAF score in the range of 45-50.[3] (Tr. 240). Dr. Schmidtgoessling noted Plaintiff experiences

---

[3] A GAF score of 41-50 indicates severe symptoms (e.g. suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational or school functioning (e.g. no friends, unable to keep a job).

"marked" limitations in her ability to understand, remember, carry out detailed instructions, and respond appropriately to work pressures in a usual work setting. (*Id*.)

At the first hearing, Plaintiff testified that she had pain in her back and leg (Tr. 263-64) and had to alternate sitting and standing during the hearing (Tr. 279). Additionally, Plaintiff stated that she had active lupus and scaly sores on elbows, hands, and scalp, and that she was missing three quarters of her hair. (Tr. 268, 271). Plaintiff reported that she stopped working in 2002 after she was no longer able to lift boxes and after her doctor restricted her to sit at work because of pain in her feet. (Tr. 269).

Throughout the hearing, Plaintiff alternated between standing and sitting positions. When questioned, she testified that it was a result of her lower back and left leg, in which she experiences numbness and tingling. (Tr. 279). She reported problems lifting more than 2-3 pounds without dropping things and stated that she can sit comfortably in one position for about an hour before she would have to move. (Tr. 280). Additionally, she testified that her legs swell causing her to have to elevate them. (Tr. 281). Plaintiff reported memory problems and problems concentrating, stating that she can only focus for 15-20 minutes. (Tr. 282). She reported that being around people, job deadlines, and getting to work on time would all be stressful for her. (Tr. 283).

With regards to Plaintiff's activities of daily living, she testified that her daughter cooks and cleans for her. (Tr. 281-82). Her daughter, Desiree Blake, also testified at the hearing that she has observed Plaintiff as being in severe pain, very depressed, and crying

on a daily basis. (Tr. 289). She also reported witnessing Plaintiff's problems walking and standing, frequent napping, fatigue, depression, and not wanting to be around people. (Tr. 289, 290). Ms. Blake reported cooking, reading mail, grocery shopping, and cleaning for her mother. (Tr. 289).

Plaintiff also testified to side effects from her medication including drowsiness, blurred vision, and dizziness. (Tr. 278). She reported that she stays tired and takes naps two to three hours a day. (Tr. 279). At the second hearing, Plaintiff testified that she was receiving benefits because she was a "slow learner." (Tr. 321). She also testified that she is worse since her benefits were cut. (*Id.*)

At the second hearing, the VE testified that Plaintiff could do packing machine operator jobs and printing machine operator jobs but that Plaintiff needed a clean environment. (Tr. 364, 365). Plaintiff claims that during the hearing there was a long discussion on clean environments and that the VE testified that the claimant would need a clean environment and thus no jobs would be available. However, this discussion is not part of the transcript.

In his decision, the ALJ found that Plaintiff suffered from severe borderline intellectual functioning, obesity, history of lupus, hypertension, lumbar spine degenerative changes, and painful low back and painful foot syndrome, but that none of these conditions met or equaled a listing. The ALJ found that Plaintiff could perform a limited range of light work, could perform jobs in the national economy, and denied the

claim.

Plaintiff claims that the ALJ improperly rejected the findings of disability by Dr. Kaiser, Dr. Schmidtgoessling, and Nurse Nancy Hogan. (*Id*. at 9).

In June 2004, Dr. Kaiser filled out a questionnaire provided to him by Plaintiff's counsel and found limitations based on Plaintiff's low back pain, and opined that Plaintiff could not lift more than 10 pounds occasionally and 5 pounds frequently, stand or walk up to 30 minutes at a time for more than 2-4 hours, or sit for more than 1 hour at a time for a total of 4-6 hours. (Tr. 216-19). He also provided a handwritten note in September 2006 stating that Plaintiff was "disabled by low back pain." (Tr. 258).

Nurse Hogan, a nurse practitioner who worked for a dermatologist, provided a handwritten prescription note in January 2006 that stated that Plaintiff was "[u]nable to work due to irritation from Discoid Lupus." (Tr. 207).

Dr. Schmidtgoessling, a psychologist, provided a consultative examination on September 2006 where she opined that Plaintiff had moderate impairments in the ability to understand, remember, and carry out even simple one and two-step jobs; had moderate impairment in her ability to maintain concentration and attention; moderate limitation in her ability to relate adequately to others; and had a severe impairment in her ability to cope with the stress of a work environment. (Tr. 240).

Plaintiff argues that all these sources should have been given controlling or significant weight, and that the ALJ substituted his own opinion for those of the medical sources. (Doc. 6 at 9). These arguments are unavailing, however.

First, Nurse Hogan is not even a treating physician, and therefore is not considered an "acceptable medical source" which could be accorded controlling weight. 20 C.F.R. § 416.913(a). Even if she were such a source, the ALJ would not have been required to give any weight or consideration to a conclusory statement of disability, which is an issue reserved to the Commissioner. *See* 20 C.F.R. 416.927(e)(1); *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004) ("'The determination of disability is ultimately the prerogative of the Commissioner, not the treating physician.'") (*quoting Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir.1985). There is little evidence to support a finding of disability based on a skin irritation, as Nurse Hogan suggests.

Similarly, Dr. Schmidtgoessling, while an acceptable medical source, is *not* a treating physician. Her opinion, based on a one-time examination, is not accorded any special deference in the Commissioner's regulations. Moreover, the ALJ explained that Dr. Schmidtgoessling's opinion was not sufficiently supported by evidence from the record. (Tr. 27-28). For example, the ALJ noted that Plaintiff's activities of daily living were not consistent with the restriction provided by Dr. Schmidtgoessling. (Tr. 28). The ALJ also observed that Dr. Schmidtgoessling's restrictions were inconsistent with those provided by other mental health medical sources. Dr. Rosenthal, another psychologist who examined Plaintiff, thought she could understand, remember, and carry out one- or two-step instructions without impairment, and that Plaintiff had no impairment in her ability to cope with ordinary work stress or maintain attention and concentration. (Tr. 28, 161-65). Reviewing psychologist Dr. Goldsmith thought Plaintiff had only mild

restrictions in the various functional domains (Tr. 186), and Dr. Buban, the psychological expert called to testify at the hearing, also opined that Plaintiff would only be limited to simple tasks with verbal instructions that did not involve strict production requirements or fast-paced work (Tr. 350-51). *See Cox v. Comm'r of Soc. Sec.*, No. 08-5344, 2008 WL 4425991 (6th Cir. Sept. 30, 2008) ("This Court generally defers to an ALJ's decision to give more weight to the opinion of one physician than another where, as here, the ALJ's decision is supported by evidence that the rejected opinion is inconsistent with the other medical evidence in the record.").

Turning to treating physician Dr. Kaiser, the ALJ was only required to give controlling or significant weight to the treating sources of record insofar as they were supported by objective evidence and consistent with the record. *Se*e 20 C.F.R. § 406.1527(d)(2); *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 287 (6th Cir. 1994). Here, the ALJ gave several reasons for rejecting Dr. Kaiser's restrictions, relying chiefly on medical tests and examination by Dr. Fritzhand. (Tr. 28). For example, while Dr. Kaiser indicated that Plaintiff could not stand or walk for more than 30 minutes, or even sit for more than one hour, relying on Plaintiff's lower back pain, Dr. Fritzhand ordered a spinal x-ray which showed normal alignment, no compression fractures, and only slight narrowing at L5-S1. (Tr. 170). Dr. Fritzhand also observed normal gait, good range of motion, comfortable appearance in sitting, and no evidence of muscle atrophy in the legs. (Tr. 166-69). While Dr. Kaiser indicated Plaintiff could not lift more than five pounds with any regularity, Dr. Fritzhand observed "well-preserved" muscle strength and

grasp strength in her arms. (Tr. 167). Dr. Fritzhand ultimately concluded that Plaintiff was "capable of performing a moderate amount of sitting, ambulating, standing, bending, kneeling, pushing, pulling, lifting and carrying heavy objects." (Tr. 168). This contrasts greatly with Dr. Kaiser's belief that Plaintiff could not even sit for more than one hour at a time.

The ALJ also observed that Dr. Kaiser's limitations were unsupported by any objective evidence because they did not include any clinical findings that would support his restrictions. Therefore, the ALJ was justified in relying on the opinion of Dr. Fritzhand, who made clinical observations to support his opinion. Accordingly, Plaintiff has not demonstrated that the ALJ improperly rejected any medical opinion of record.

**B.**

For her second assignment of error, Plaintiff maintains that the ALJ erred in finding that she did not meet Listing 12.05(C).

Plaintiff claims that the ALJ should have found her disabled under the listing for mental retardation. (Doc. 6 at 9-10). The mental retardation listing, found at 20 C.F.R. Part 404, Subpart P, Appendix 1 § 12.05 ("Listing 12.05C"), requires Plaintiff to document a valid verbal, performance, or full scale I.Q. score of 60 to 70, as well as another physical or mental impairment that imposes additional and significant work-related limitations of functioning.

In addition, unlike other listings, Listing 12.05C *also* requires satisfaction of the diagnostic description in the introductory paragraph. *See* 20 C.F.R. Part 404, Subpt. P,

App. 1, § 12.00A; 71 Fed. Reg. 10419, 10423 (2006) (final rule) ("[T]o meet listings 12.05 and 112.05, you must have mental retardation that satisfies the criteria in the introductory paragraph of those listings (the so-called capsule definition) in addition to the criteria in one of the paragraphs that follows the capsule definition.").

Here, Plaintiff claims that the ALJ found that Plaintiff could not meet or equal the Listing without a formal diagnosis of mental retardation. However, while it is true that the ALJ did take note of the fact that various mental treating sources declined to diagnose Plaintiff with mental retardation, he instead opted for borderline intellectual functioning, thus supporting a conclusion that Plaintiff did not meet the diagnostic criteria for mental retardation. (Tr. 31).

However, the diagnostic criteria found in the introductory paragraph of Listing 12.05C, along with the requisite IQ scores, *mirror* the diagnostic criteria for mental retardation.[4] Thus, if medical sources of record do not believe Plaintiff meets the diagnostic criteria for mental retardation, it follows that she does not meet the criteria of the introductory paragraph, which is necessary to meet the Listing. *See Cooper v. Comm'r of Soc. Sec.*, No. 06-5606, 2006 WL 543059 (6th Cir. Feb. 15, 2007) ("Yet, it is not enough for a claimant to point to one IQ score below 71; the claimant must also satisfy the 'diagnostic description' of mental retardation in Listing 12.05").

---

[4] Am. Psychological Assoc., Manual of Diagnosis and Professional Practice in Mental Retardation 13 (1996) ("Mental retardation (MR) refers to (a) significant limitations in general intellectual functioning; (b) significant limitations in adaptive functioning, which exist concurrently; and (c) onset of intellectual and adaptive limitations before the age of 22 years . . . Classification requires that all three criteria must be met."). *Id.* at 14.

Dr. Schmidtgoessling, the doctor who administered Plaintiff's most recent IQ test, did not think Plaintiff had mild mental retardation. (Tr. 31, 239). Dr. Buban, the medical expert at the hearing, found that Plaintiff had borderline intellectual functioning, not mental retardation. (Tr. 355-56). Similarly, Dr. Goldsmith, a reviewing psychologist, also thought Plaintiff had borderline intellectual functioning as opposed to mental retardation. (Tr. 180).

It is significant that no medical source of record thought Plaintiff met the diagnostic criteria for mental retardation, which are the same criteria necessary to satisfy introductory paragraph of Listing 12.05C. *West v. Comm'r of Soc. Sec.*, No 06-5763, 2007 WL 1991059 (6th Cir. July 5, 2007) ("The medical evidence also supports the ALJ's conclusion [that claimant did not have the requisite deficits of adaptive functioning]. Both Mr. I.T. Baldwin and Dr. Gary Dunn performed psychological examinations of West, and neither diagnosed him with any form of mental retardation."). Accordingly, the ALJ's conclusion that Plaintiff did not meet the diagnostic criteria of the introductory paragraph is well-supported by the record.

Additionally, it is unlikely that Plaintiff has even met the requisite threshold IQ score for consideration under Listing 12.05C, which requires at least one valid IQ score below 70. Here, Plaintiff received IQ scores ranging from 48 to 52 on her most recent test in September 2006. (Tr. 239). However, Dr. Schmidtgoessling indicated that these scores were "probably. . .underestimates." (*Id*.) Therefore, they are not *valid* scores as required by the listing. Plaintiff's last test in 1996 revealed a full range IQ score of 70,

which is too high to meet the requirements of Listing 12.05C, and also casts even greater doubt as to the validity of Plaintiff's full-scale score of 48 in 2006, when she was trying to obtain disability benefits. *Id*.

Plaintiff cannot meet the diagnostic description found at Listing 12.00, nor can she produce valid IQ test scores to meet the Listing. No medical source has diagnosed Plaintiff with mental retardation, and she has not submitted sufficient evidence pertaining to her lack of adaptive function prior to the age of 22. Because it is her burden at step three to show that a listing can be met or equaled, Plaintiff's claim is unavailing.

## C.

For her third assignment of error, Plaintiff maintains that the ALJ erred in finding that she was not disabled on the basis of pain. (Doc 6 at 11-12).

Plaintiff testified that her pain was so bad that she had 20 "bad days" a month, which would prevent her from working. (Doc. 6 at 11). However, ALJ's are not required to fully credit a claimant's pain complaints merely because they are consistently made, as Plaintiff contends. *Id*. Instead, ALJ's are charged with considering a claimant's subjective complaints of pain and limitation, and crediting them only to the extent they are consistent with objective and other evidence in the record. 20 C.F.R. § 416.929(a); *see also* Social Security Ruling ("SSR") 96-7p ("In general, the extent to which an individual's statements about symptoms can be relied upon as probative evidence in determining whether the individual is disabled depends on the credibility of the statements.").

Here, the ALJ indicated in great detail why he did not view Plaintiff's claims of disabling pain as credible. (Tr. 33-36). He considered the objective evidence that could support her claim of disabling back pain -- here, a spinal x-ray which showed only slight narrowing at L5-S1. (Tr. 35). He also considered medical opinion evidence, noting that Dr. Fritzhand thought she was capable of performing a moderate amount of sitting, walking, standing, and other activities. (*Id*.) The ALJ also considered medication and other treatment used by Plaintiff to alleviate her pain. He found that Plaintiff relied on conservative care and treatment for her back and foot pain. (*Id*.) The ALJ also considered her daily activities, which included the ability to perform household chores, drive, shop, attend church, and babysit. (Tr. 34).

In addition, the ALJ noted that Plaintiff stood and walked around the hearing room complaining of pain during her first hearing in February 2006, but stood only once during the June 2007 hearing and exhibited no obvious signs of pain as she had done before. (Tr. 34). Additionally, Plaintiff told the ALJ under oath that she could not count money, but admitted otherwise to Dr. Rosenthal. (Tr. 34-35, 162, 325). The ALJ was entitled to consider these discrepancies in assessing her credibility. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997) ("Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among the medical reports, claimant's testimony, and other evidence.").

The ALJ's consideration of the veracity of Plaintiff's claims and her credibility was based on a thorough review of the objective and other evidence in the record.

-16-

Accordingly, the ALJ's credibility assessment was substantially supported by evidence in the record. *See Sizemore v. Sec'y of Health & Human Servs.*, 865 F.2d 709, 713 (6th Cir. 1988) ("This court will not disturb the ALJ's credibility determinations on such factual matters"); *Duncan v. Sec'y of Health and Human Servs.*, 801 F.2d 847, 852 (6th Cir. 1986) ("determinations of credibility related to subjective complaints of pain rest with the ALJ and [the ALJ's observations] should not be discarded lightly").

**D.**

For her final assignment of error, Plaintiff claims that the ALJ erred in disregarding the vocational expert's ("VE") testimony regarding clean air environment.

Plaintiff argues that remand is necessary because the transcript does not reflect the "testimony" of the VE that occurred off the record. (Doc. 6 at 12). Plaintiff claims that the ALJ interrupted a question posed by Plaintiff's counsel to the VE to go off the record when the VE answered, and then went back on the record. (*Id.*) Plaintiff believes that this off-the-record conversation should be part of the record. (*Id.*)

Represented by counsel, Plaintiff should have known the effect of going "off the record" -- any words spoken while off the record would not be transcribed as part of the official hearing. Plaintiff did not submit any authority to support her position that statements made off the record should nevertheless have been transcribed. Indeed, had the ALJ relied upon off the record statements to find Plaintiff not disabled, Plaintiff would have had a legitimate due process claim against the Commissioner. *See Vasha v. Gonzales*, 410 F.3d 863 (6th Cir. 2005) (providing that an immigration judge crossed

from impartial arbiter to government advocate by relying on evidence in her decision obtained from an off-the-record conversation with the court's clerk).

Instead, the ALJ in this case relied only upon evidence that was elicited on the record in open hearing. It would be improper to remand this case to procure transcripts of conversations made off the record in this case. Plaintiff also claims that the ALJ interrupted her attorney's question to go off the record and discuss the matter. However, the ALJ went back "on the record," and Plaintiff's attorney had every opportunity to ask the ALJ to allow questioning of the VE which she wanted to have on the record. Had Plaintiff made such a request to the ALJ and been refused, her claim would have merit. As it is, Plaintiff's counsel simply failed to ask the questions she wished to ask on the record.

Finally, even if this Court were to consider Plaintiff's characterization of this off-the-record evidence, which would be improper under the limited jurisdiction conferred by Congress to the courts to consider the closed record in disability cases, Plaintiff's counsel appears only to have provided alternative hypothetical restrictions to the VE concerning environmental irritants and a sit/stand restriction. (Doc. 6 at 12). These alternative questions would not be relevant because there is no evidence in the record to support such restrictions. For these reasons, her claim that the hearing transcript was incomplete is unavailing.

The ALJ's decision was well supported by objective and other evidence in the record, and is fully consistent with most medical sources of record.

## III.

For the foregoing reasons, Plaintiff's assignments of error are not well-taken. The ALJ's decision is supported by substantial evidence and should be affirmed.

**IT IS THEREFORE RECOMMENDED THAT:**

The decision of the Commissioner, that Plaintiff was not entitled to supplemental security income, be found **SUPPORTED BY SUBSTANTIAL EVIDENCE**, and **AFFIRMED**; and, as no further matters remain pending for the Court's review, this case be **CLOSED.**

Date:   October 7, 2009          s/ Timothy S. Black
                                                                Timothy S. Black
                                                                United States Magistrate Judge

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION

| | | |
|---|---|---|
| FRANCENIA GRIFFEY, | : | Case No. 1:08-cv-786 |
| | : | |
| Plaintiff, | : | Judge Sandra S. Beckwith |
| | : | Magistrate Judge Timothy S. Black |
| vs. | : | |
| | : | |
| COMMISSIONER OF | : | |
| SOCIAL SECURITY, | : | |
| | : | |
| Defendant. | : | |

**NOTICE**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within **10 DAYS** after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(e), this period is automatically extended to **13 DAYS** (excluding intervening Saturdays, Sundays, and legal holidays) when this Report is being served by mail and may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. A party may respond to another party's objections within **10 DAYS** after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters,* 638 F. 2d 947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140, 106 (1985).